# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

SEAN DARNELL FOWLKES,

           Plaintiff,

        v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

           Defendants.

_____

      Civil Action No. 13-0122 (RC)

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons discussed below, defendants' motion will be granted in part and denied in part, and plaintiff's motion will be denied.[1]

## I.  BACKGROUND

      Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, in an effort to obtain records maintained by the Executive Office for United States Attorneys ("EOUSA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Drug Enforcement Administration ("DEA"), all components of the United States Department

---

[1] Plaintiff's motion for summary judgment will be denied, and instead it is construed as his opposition to defendants' motion for summary judgment. His motion for discovery is meritless and it will be denied.

of Justice ("DOJ").  *See generally* Amended Complaint for Declaratory and Injunctive Relief

[ECF No. 40] ("Am. Compl.") at 2-8.

## A.  *Requests to the Executive Office for United States Attorneys*

### 1.  FOIA No. 12-1689

In relevant part, plaintiff's first FOIA request to the EOUSA stated:

> I'm requesting a copy of the indictment and or complaint and
> arrest warrant with attached affidavits filed on May 5, 2009 as to
> case 1:09-CR-00244-CCB in the United States District Court for
> the District of Maryland Northern Division [including] but not
> limited to those items.  Please confirm or deny the existence of
> those items named.  Also please comply with the provision of
> Federal Rule[] of Criminal Procedure 49.1 of those materials that
> are exempt from redaction.

Memorandum of Points and Authorities in Support of Defendants' Motion for Summary

Judgment [ECF No. 9-2] ("Defs.' First Mem."), Declaration of David Luczynski ("First

Luczynski Decl."), Ex. A (Freedom of Information and Privacy Act Request dated March 30,

2012).  The EOUSA processed his request and released 20 pages of records in full.  First

Luczynski Decl. ¶ 9.  In addition, the EOUSA referred "a number of pages" to the DEA, the

component where they originated, *id.* ¶ 9, for the DEA's direct response to plaintiff, *see id.*, Ex.

F (Letter to plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information &

Privacy Staff, EOUSA, dated August 16, 2012).

### 2.  FOIA No. 12-5244

Plaintiff's next FOIA request to the EOUSA sought grand jury information:

> [D]isclosure of the dates that grand jury #2010R00536 convened
> pertaining to criminal no. 1:09-CR-00244-CCB in the United

States District Court for the District of Maryland Northern
Division including the starting and ending dates of its term.

Memorandum of Points and Authorities in Support of Defendants' Renewed Motion for

Summary Judgment [ECF No. 42-2] ("Defs.' Second Mem."), Third Declaration of David

Luczynski ("3d Luczynski Decl."), Ex. A (Freedom of Information and Privacy Act Request

dated August 23, 2012). The EOUSA released one page in part, after having redacted

information pursuant to Exemptions 3 and 7(C). 3d Luczynski Decl. ¶ 7; *see id*., Ex. D (Letter to

plaintiff from Susan B. Gerson dated March 29, 2013) at 1.

### 3. FOIA No. 13-755

In his third FOIA request to the EOUSA, plaintiff sought the following information:

> [D]isclosure of the dates that grand jury #2010R00518 convened
> pertaining to criminal no. 1:10-CR-00332-CCB in the United
> States District Court for the District of Maryland Northern
> Division including the starting and ending dates of its term, the
> date the indictment was returned, [the] date the grand jury was
> discharged, the name of the judge who summoned the grand jury
> and a certified copy of the minute entries.

Defs.' Second Mem., Second Declaration of David Luczynski ("2d Luczynski Decl.") ¶ 4; *see* 2d

Luczynski Decl., Ex. A (Freedom of Information and Privacy Act Request dated February 4,

2013). The EOUSA released "the dates relevant to the grand jury," *id*. ¶ 9, and otherwise denied

the request pursuant to Exemption 3:

> With respect to your request for Grand Jury information No.
> 2010R00518 pertaining to Criminal Case No. 1:10-CR-00332-
> CCB in the United States District Court for the District of
> Maryland, Northern Division, we are providing the following: 1)
> that Grand Jury began on January 6, 2009 and ended on June 29,
> 2010, 2) the Grand Jury in question was the Tuesday Grand Jury,
> January 2009 term, 3) the remaining portion of your request has
> been denied in full pursuant to FOIA Exemption [3].

*Id.*, Ex. F (Letter to plaintiff from Susan B. Gerson dated September 25, 2013).

4. FOIA No. 13-1128

Plaintiff's fourth FOIA request to the EOUSA sought the following information:

> [D]isclosure of the dates that grand jury #2010R00536 issued the indictments and superseding indictments pertaining to criminal no. 1:10-CR-00244-CCB Filed in the United States district court for the district of Maryland Northern Division including the name of the judge who summoned the grand jury, whether it was summoned pursuant to F. R. Crim. P. 6(a) or 18 USC 3331[,] and the certified letter requesting the special grand jury, the date the grand jury was discharged, the caption of the indictment and superseding indictments, and a certified copy of the minute entries.

2d Luczynski Decl., Ex. G (Freedom of Information and Privacy Act Request dated March 12, 2013). The EOUSA "provided [plaintiff with] the dates relevant to the grand jury," and otherwise denied the request pursuant to Exemption 3. *Id.* ¶ 15; *see id.*, Ex. L (Letter to plaintiff from Susan B. Gerson dated September 25, 2013).

### B. *Request to the Bureau of Alcohol, Tobacco, Firearms and Explosives*

Plaintiff allegedly sent FOIA requests to the ATF on March 29, 2012 and August 28, 2012. Am. Compl. at 2. The ATF did not receive these requests, however, and instead it treated plaintiff's Amended Complaint as if it were a FOIA request. *See* Defs.' First Mem, Declaration of Stephanie M. Boucher ("Boucher Decl.") ¶¶ 5-7 & n.1. Plaintiff sought:

> The criminal investigative File and or complaint in reference to criminal no. 1:10-CR-00332-CCB-1 in the United States District Court for the District of Maryland Northern Division oc[c]urring on 5/6/2009 and any subsequent date after in connection with Firearm 357 Magnum revolver, model GP-100, serial no. 170-50376, all tangible and nontangible records, Typed notes,

handwritten notes, reports, pictures, video recordings, affidavits but not limited to these materials.

Am. Compl., Ex. A-1 (Freedom of Information and Privacy Act Request dated March 29, 2012). Responsive records were found in Criminal Investigatory File No. 761015-09-0110. Boucher Decl. ¶ 25. Plaintiff's request was granted in part, and the ATF released records which had been redacted under Exemptions 3, 7(C), and 7(E). *Id.* ¶ 8. In addition, the ATF referred 10 pages of documents to the DEA, the component where they originated, for the DEA's direct response to plaintiff. *Id.* ¶ 9.

### C. Referrals to the Drug Enforcement Administration

#### 1. DEA FOIA Request No. 12-00185-PR

From the EOUSA, the DEA received 48 pages of records. Defs.' Second Mem., Declaration of Katherine L. Myrick ("Myrick Decl.") ¶ 3.[2] Of these pages, the DEA released 12 pages in part and withheld 36 pages in full. Myrick Decl. ¶ 4. It relied on Exemptions 3, 7(C), 7(D), 7(E) and 7(F). *Id.*; *see id.*, Ex. B (Letter to plaintiff from Katherine L. Myrick, Chief, Freedom of Information/Privacy Act Unit, FOI/Records Management Section, DEA, dated December 26, 2012) at 2.

---

[2] According to plaintiff, because the DEA is not a party to this action, the declaration of Katherine L. Myrick should be stricken. *See* Motion to Strike [ECF No. 48] at 1. Even though plaintiff did not submit a FOIA request directly to the DEA, the EOUSA and the ATF are obligated to account for the responsive materials located in their records, even if the decision to release or withhold information is left to the component where those records originated. *See Williams v. FBI*, No. 92-5176, 1993 WL 157679, at *1 (D.C. Cir. May 7, 1993) (per curiam) (remanding case in order that FBI justify withholding a document referred to DEA for its direct response to requester); *Plunkett v. Dep't of Justice*, 924 F. Supp. 2d 289, 305 (D.D.C. 2013) (noting that agency "is ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request"). Plaintiff's Motion to Strike will be denied.

## 2. DEA FOIA Request No. 13-00099-PR

The ATF referred 10 pages of records to the DEA. *Id.* ¶ 5. The DEA withheld six pages in full pursuant to Exemptions 7(C), 7(E), and 7(F). *Id.* ¶ 6; *see id.*, Ex. D (Letter to plaintiff from Katherine L. Myrick dated July 1, 2013) at 2. Four additional pages were withheld in full because the DEA already had processed them in response to a prior request, DEA FOIA Request No. 10-00928-P. *Id.* ¶ 6. Subsequently, the DEA released additional portions of page 46, which it previously had released in part, and released portions of page 9, which it previously had withheld in full. *Id.* ¶ 7; *see id.*, Ex. E (Letter to plaintiff from Katherine L. Myrick dated November 14, 2013).

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record [or] by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge

an agency's showing that it complied with the FOIA, the plaintiff must come forward with

'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has

improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113,

119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

### B. Searches for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and

is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d

1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency

"fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search

was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v.

U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations

omitted). A search need not be exhaustive. *See Miller v. U.S. Dep't of State,* 779 F.2d 1378,

1383 (8th Cir. 1995). As long as the agency conducts a reasonable search, it fulfills its

obligations under the FOIA even if the search yields no responsive records. *See Iturralde v.

Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an

agency to turn up one specific document in its search does not alone render a search

inadequate").

To meet its burden, the agency may submit affidavits or declarations that explain in

reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C.

Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to

demonstrate an agency's compliance with the FOIA. *Id.* at 127. If, on the other hand, the record "leaves substantial doubt as to the sufficiency of the search, [then] summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

### 1. Executive Office for United States Attorneys

Plaintiff's requests indicated that the underlying criminal proceedings took place in the United States District Court for the District of Maryland, Northern Division. It was determined that "responsive documents . . . would have been located in the [United States Attorney's Office for the District of Maryland (USAO/DMD)]." 2d Luczynski Decl. ¶ 16. Accordingly, the matter was sent to the FOIA Contact for the USAO/DMD. *See id.*

With regard to Request No. 12-1689 for a copy of the indictment and other materials pertaining to criminal case number 1:09-cr-00244, the EOUSA located responsive records, released 20 pages of records in full and referred pages to the DEA. First Luczynski Decl. ¶ 9. Plaintiff argues that the supporting declaration "was insufficient . . . in regards to the adequacy and scope of its search." Memorandum of Points and Authorities in Support of Plaintiff's Concise Statement of Material Facts Not In Dispute [ECF No. 49] ("Pl.'s SOMF") ¶ 23. The Court concurs. Without a description of the scope and method of the search, the Court cannot determine whether the EOUSA's search was adequate under the circumstances.

Request Nos. 13-1128 and 12-5244 pertained to the dates on which grand jury # 2008R00536 convened and indictments it issued in criminal case number 1:09-CR-00244. *See* 2d Luczynski Decl. ¶ 10; 3d Luczynski Decl. ¶ 4. The EOUSA processed both requests under

Request No. 12-5244, and closed Request No. 13-1128 as duplicative. *See* Am. Compl., Ex. F-4 (Letter to plaintiff from Susan B. Gerson dated July 16, 2013).

The FOIA Contact was instructed "to conduct a search at USAO/DMD for grand jury dates including the first and last dates of the term for Criminal No. CCB-09-0244 in connection with Request No. 2012-5244." 3d Luczynski Decl., Ex. E ("2d Hart Decl.") ¶ 4. The FOIA Contact described the process as follows:

> The system utilized in searching for records pertaining to cases in the United States Attorney's Office is the Legal Information Network System ("LIONS"). The LIONS system is a computer system used by United States Attorney's Offices to track cases and retrieve files pertaining to cases and investigations. By use of the LIONS system, the user can access databases which can be used to retrieve the information based on a defendant's name, the USAO number (United States Attorney's Office internal administrative number), the Assistant United States Attorney assigned to the case, and the district court case number. The FOIA Request is then forwarded to the assigned Assistant United States Attorney ("AUSA") or Criminal or Civil Chief for all responsive documents. Once complete, the FOIA file and all responsive documents are forwarded to EOUSA. EOUSA makes all determinations regarding the release or withholding of records.

2d Hart Decl. ¶ 6.

The FOIA Contact first "looked for records in the computer tracking system for the USAO/DMD that were listed under Sean Fowlkes . . . to identify the Assistant United States Attorney assigned to Criminal No. CCB-09-0244." *Id.* ¶ 5. Once the AUSA had been identified, the FOIA Contact "forwarded the FOIA Request . . . via electronic mail," and the AUSA "checked his files for the USAO numbers for the two cases associated with Fowlkes." *Id.* ¶ 7. She further stated:

> [The] AUSA . . . had two such cases, USAO 2008R00536 (which is a case in which Fowlkes was indicted in a drug conspiracy

matter with several codefendants) and USAO 2010R00518 (which was a case in which <u>Fowlkes</u> was indicted by himself with a gun charge). [The] AUSA . . . then checked PACER (an online system for checking federal court dockets) for the indictment dates corresponding to <u>Fowlkes's</u> two indictments. The indictment dates were the dates on which [the] AUSA . . . presented evidence relating to <u>Fowlkes</u> and his codefendants to the grand jury. When [the] AUSA . . . inquired with this Office's grand jury coordinator and was advised that the grand jury which sat on those dates was the Tuesday Grand Jury for the January 2009 term; the grand jury coordinator also provided the starting and ending dates for that grand jury's term.

*Id.* The AUSA prepared a memorandum with the grand jury #2008R00536 dates, and the FOIA Coordinator forwarded it to the EOUSA. *Id.* ¶ 8. Based on this submission, the EOUSA released one page in part – the AUSA's memorandum – after having redacted information under Exemptions 3 and 7(C). 3d Luczynski Decl., Ex. D (Letter to plaintiff from Susan B. Gerson dated March 29, 2013) at 1; Am. Compl., Ex. C-5 (Memorandum from Michael Hanlon, AUSA, dated February 12, 2013).

In Request No. 13-755, plaintiff sought the dates on which grand jury # 2010R00518 convened with respect to another criminal case no. 1:10-CR-00332. 2d Luczynski Decl. ¶ 4. The FOIA Contact identified the AUSA assigned to the criminal case and received from him the requested information, and in turn the EOUSA released to plaintiff the relevant dates. *Id.* ¶ 9; *see id.*, Ex. F.

Plaintiff raises no objection to the scope or method of the searches for records responsive to Request Nos. 12-5244 and 13-755, and based on the EOUSA's supporting declarations, the Court concludes that the EOUSA's searches were reasonable.

## 2. Bureau of Alcohol, Tobacco, Firearms and Explosives

The ATF's declarant has described the Treasury Enforcement Communications System ("TECS") as follows:

> TECS is a text-based database, owned and maintained by the Bureau of Customs and Border Protection, Department of Homeland Security, and contains information that may be of interest to law enforcement agencies. TECS is a computerized information system designed to identify individuals and businesses suspected of or involved in violation of Federal law. TECS is also a communications system permitting message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies. TECS provides access to the FBI's National Crime Information Center (NCIC) and the National Law Enforcement Telecommunications System (NLETS) with the capability of communicating directly with state and local law enforcement agencies. TECS is also a comprehensive ATF law enforcement database that contains ATF investigative records. ATF records located in TECS include: wanted persons and fugitives; known and suspected violators of laws falling within the jurisdiction of ATF; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives under the Gun Control Act of 1968; violent felons; and gangs and terrorists. The TECS system contains seven record subsections: People[,] Business, Aircraft, Firearms, Vehicles, Vessels, and Things. Bureau wide, ATF performs an average of 130,000 queries per month against records in the following subsections: People[,] Business, Firearms, and Vehicles. These queries reveal ATF investigation numbers that correspond to a specific field division where any files would be located.

Boucher Decl. ¶ 24. "[B]ecause the TECS database contains the names of the individuals ATF has investigated, it was the place most likely to locate responsive records." *Id.* ATF staff used plaintiff's "personal information including his name and date of birth" to conduct a TECS query, and that query identified Criminal Investigatory file 761015-09-0110 associated with ATF's Baltimore Field Division. *Id.* ¶ 25.

Plaintiff raises no objection to the scope or method of the search, and based on the supporting declaration, the Court concludes that the ATF's search for responsive records was reasonable.

## C.  FOIA Exemptions

### 1.  Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute" if the statute either "(A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph."  5 U.S.C. § 552(b)(3).

### a.  ATF: Firearms Trace Reports

The ATF withholds in full "a firearms Trace Report wholly derived from the contents of the Firearms Trace System Database," Boucher Decl. ¶ 13, "pursuant to Exemption 3[ and the] Consolidated Appropriations Act of 2012, Pub. L. No. [] 112-55, 125 Stat. 552," *id*. ¶ 11.  The declarant quotes the following provision of Public Law 112-55:

> [N]o funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the [ATF] or any information required to be kept by licensees pursuant to [18 U.S.C. § 923(g)], or required to be reported pursuant to paragraphs (3) and (7) of such [§] 923(g), except to: (1) a Federal, State,  local, or tribal law enforcement agency or a prosecutor solely in connection with and for use in a criminal investigation or prosecution . . . .  [A]ll such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be

> permitted based on the data, in a civil action in a State (including
> the District of Columbia) or Federal court or in an administrative
> proceeding other than a proceeding commenced by the [ATF] . . . .

Boucher Decl. ¶ 12. She avers that "Trace Reports are based [on] and derived from information required to be kept by a Federal Firearms Licensee (FFL) pursuant to 18 U.S.C. § 923(g)," and for this reason, "and through the language of P.L. 112-55, Congress has expressly prohibited ATF from releasing such documents to the public and made them ultimately immune from legal process." *Id.* ¶ 13.

The statute on which the ATF relies, the Consolidated Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552 (2011), was enacted after the OPEN FOIA Act of 2009, Pub. L. No. 111-83, 123 Stat. 2142 (2009). To satisfy Exemption 3, then, the Consolidated Appropriations Act of 2012 expressly must reference Exemption 3. *See Smith v. Fed. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 13-13079, 2014 WL 3565634, at *5 n.2 (E.D. Mich. July 18, 2014) (noting that the ATF initially relied on the Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3034, and subsequently relied on the Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844, instead, "[l]ikely . . . because the Consolidated Appropriations Act of 2010 does not appear to satisfy subsection 5 U.S.C. § 552(b)(3)(B) of Exemption 3, which requires statutes enacted after the enactment date of OPEN FOIA Act of 2009 to specifically cite to the Exemption 3 paragraph to be applicable"). Here, the ATF's declarant does not state that the Consolidated Appropriations Act of 2012 specifically refers to 5 U.S.C. § 552(b)(3) and, therefore, the ATF does not demonstrate that Exemption 3 applies.

b.  EOUSA: Grand Jury Information

Insofar as "[r]ecords requested by [p]laintiff contained grand jury information," 2d Luczynski Decl. ¶ 21, the EOUSA applies Exemption 3 "in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure to withhold [the records in] part," *id.* ¶ 23; *see* 3d Luczynski Decl. ¶¶ 13, 15.

Rule 6 of the Federal Rules of Criminal Procedure is considered a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981). It expressly prohibits disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998). While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of the FOIA, the Court of Appeals for the District of Columbia Circuit limits the exception to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

The EOUSA's declarant explains that "[s]pecific items requested by plaintiff such as minute entries, names of judges, and certified letters . . . contain information which will either . . . reveal the scope and direction of the grand jury proceedings, or . . . the identities of witnesses and other third parties which could possibly subject them to reprisal and possible harm to them or their families."  2d Luczynski Decl. ¶ 22.  The actual information withheld "is directly related

to specific events occurring during the grand jury proceedings," and, if disclosed, it "could be used to . . . identify witnesses and in some instances the information provided by the witnesses." *Id*. ¶ 23; 3d Luczynski Decl. ¶ 15. Its release, the declarant avers, "would impermissibly reveal the scope of the grand jury and the direction of the investigation by providing the identities of the source of the evidence." 2d Luczynski Decl. ¶ 23. The declarant further explains:

> While it is impossible to predict the exact way that seemingly innocuous information may be utilized, specific dates included, it is easy to speculate on the harmful outcome. In a prison environment, where everyone's location is known, determined, and verified daily, if a particular inmate, who happens to be a co-defendant, is not present, suspicion will arise. If it is later determined that a particular individual was somewhere else on the exact date of a grand jury proceeding, it is possible to see how other co-defendants may think he was making a deal by testifying against them. This usually ends in a violent attack on the inmate by others. Withholding any particular information will help protect such individuals and ensure cooperation of others.

3d Luczynski Decl. ¶ 14. Further, release of the information "would provide [plaintiff] with the scope of the grand jury's investigation by setting forth how the Government developed its case, and [on] whom the Government relied . . . to develop the elements of the alleged crimes." *Id*. ¶ 15.

Plaintiff argues that "[t]he third declaration of David Luczynski does not detail how the withheld dates the grand jury convened would tend to reveal a 'secret aspect' of the grand jury investigation to properly cite Exemption (b)(3) in conjunction with F.R. crim. P. 6(e)." Pl.'s SOMF ¶ 44. Plaintiff misunderstands the defendants' declarations. The EOUSA's responses to his FOIA requests include the dates on which the two grand juries identified by plaintiff convened. *See* 2d Luczynski Decl. ¶¶ 9, 15; 3d Luczynski Decl. ¶ 7; Am. Compl., Ex. C-5. The dates have not been withheld; the EOUSA's reliance on Exemption 3 is limited to all other grand

jury information in the responsive records falling within the scope of Exemption 3's grand jury exception. The declarations adequately explain that release of information other than the grand jury dates would reveal the scope and direction of the grand jury investigation and the sources of information on which the government based its case. With one exception, the EOUSA's decision to withhold such information under Exemption 3 in conjunction with Rule 6(e) is appropriate. *See, e.g., Davis v. U.S. Dep't of Justice*, 970 F. Supp. 2d 10, 17 (D.D.C. 2013) (withholding grand jury materials notwithstanding requester's belief that certain information should have been disclosed to him during his criminal trial). The EOUSA has not adequately explained how disclosure of the name of the judge either would reveal the scope and direction of the grand jury or subject him or her to reprisal or possible harm. If the EOUSA wishes to withhold the judge(s)' name(s), it must provide further justification (under either Exemption 3 or Exemption 7).

### c. DEA: Information Concerning Wiretaps

"In this case, the DEA withheld information concerning wiretaps pursuant to 18 U.S.C. § 2517 of individuals involved in a drug trafficking organization." Myrick Decl. ¶ 10. The declarant explains that, although "Section 2517 permits disclosure of intercepted communications in only three circumstances, none of [those circumstances is] implicated in a FOIA request." *Id.* Plaintiff does not oppose this determination, and based on the supporting declaration, the Court concludes that the DEA properly withheld this wiretap information under Exemption 3. *See Lam Lek Chong v. U.S. Drug Enforcement Admin.*, 929 F.2d 729, 733-35 (D.C. Cir. 1991).

2.  Exemption 7

a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

Although none of the supporting declarations address the EOUSA's law enforcement role, it is apparent that the prosecution of criminal cases is a primary responsibility of the agency. The plain language of plaintiff's FOIA requests -- all of which pertain to criminal matters handled by the USAO/DMD -- and the location of the responsive records in the Criminal Case File System (JUSTICE/USA-007), *see* First Luczynski Decl. ¶¶ 14-15; 2d Luczynski Decl. ¶¶ 17-19; 3d Luczynski Decl. ¶ 10, evidence a law enforcement purpose, that is, pursuing criminal cases against plaintiff.

The ATF's declarant describes the ATF as "a criminal and regulatory enforcement agency within the [DOJ] responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968, 18 U.S.C. §§ 921-930, the Federal explosives laws, 18 U.S.C. Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter 53."  Boucher Decl. ¶ 14. "ATF records maintained in accordance with ATF's criminal law enforcement duties," *id*.,

include trace reports based on "information . . . kept . . . pursuant to 18 U.S.C. § 923(g)," *id*. ¶ 13.

The DEA's declarant explains that the agency's "investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*." Myrick Decl. ¶ 11. DEA thus is authorized to investigate "incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; [to] seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking[; to] cooperate with counterpart agencies abroad[;] and to exchange information in support of drug traffic prevention and control." *Id*. The responsive records originating with the DEA "were compiled during criminal law enforcement investigations of the plaintiff and several third parties." *Id*. ¶ 12.

The declarants adequately establish, and plaintiff does not dispute, that the responsive records at issue in this case were compiled for law enforcement purposes within the scope of Exemption 7.

b. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the privacy interests of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and

"individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the public interest, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

### *i.* EOUSA

The EOUSA redacts the name of an employee of the USAO/DMD from one page. 3d Luczynski Decl. ¶ 16. The declarant explains that release of this information "could subject [this employee] to an unwarranted invasion of [his or her] personal privacy," through, for example, "unwanted efforts to gain access to [him or her] or to personal information about [him or her] – or subject [him or her] to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences – all to [his or her] detriment." *Id*. ¶ 17. The EOUSA finds that its "dissemination would not help explain government activities or operations," and for this reason, the declarant asserts that "no countervailing public interest in the release of this privacy-protected information . . . outweighs [the third party's] privacy [interest]." *Id*. ¶ 18.

### *ii.* ATF

The ATF withholds under Exemption 7(C) the names of federal law enforcement agents, other federal law enforcement agency employees, and third parties, as well as information by which these individuals could be identified. Boucher Decl. ¶ 17. With regard to ATF Special

Agents and other law enforcement personnel, the declarant explains that their "identities . . . are protected because disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned." *Id.* ¶ 19. Disclosure may also "subject them to unwarranted harassment." *Id.* With regard to the other third parties, the declarant explains that "disclosure of [their identities] could reasonably be expected to cause [them] embarrassment, harassment, and harm." *Id.* ¶ 21. The declarant asserts that "revealing this information is unlikely to add to the public's understanding of how [the] agency works or how well it performs its duties." *Id.* ¶ 20. Having "balanced the interest in disclosure against the individuals' privacy interest[s]," *id.*, the ATF concludes that the individuals' privacy interests prevail, *see id.* ¶¶ 20-21.

### *iii.* DEA

The DEA withholds "names and identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff or with a law enforcement investigation," on the ground that disclosure of this information "could subject them to possible harassment and could focus derogatory inferences and suspicion on them." Myrick Decl. ¶ 13. These third parties include suspects, co-defendants and confidential sources. *Id.* The declarant states that there is no discernible public interest in disclosure of their identities, *id.* ¶ 14, as disclosure would not "inform the . . . general public about DEA's performance of its mission [or] how DEA conducts its internal operations and investigations," *id.* ¶ 15. Absent any "legitimate public interest in the information withheld under [Exemption 7(C)]," the declarant states that its "release . . . would constitute an unwarranted invasion of [the third parties'] personal privacy." *Id.*

Plaintiff raises no objection to the redaction of names of and identifying information about any of the third parties appearing in the responsive records. On review of the declarations, the Court concludes that the EOUSA, the ATF and the DEA properly have withheld this information under Exemption 7(C).

c. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, "[a] source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (quoting *Landano*, 508 U.S. at 170-74). "When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential," *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011)

(internal quotation marks and citation omitted), such as "[t]he nature of the crime . . . investigated and the source's relation to it," *Landano*, 508 U.S. at 180.

### i. Express Assurance of Confidentiality

The DEA invokes Exemption 7(D) to protect the identity of and information furnished by confidential sources. *See* Myrick Decl. ¶¶ 38-45. In this case, certain information pertains to coded informants to whom the DEA extended an express grant of confidentiality. *Id*. ¶ 40. A coded informant "ha[s] a continuing cooperative association, by written signed agreement, with DEA." *Id*. ¶ 41. He or she is assured that his or her name will not appear in DEA investigative files. *Id*. Instead, the DEA either substitutes an identification code in place of his or her name, or refers to the informant as CI, SOI or CS. *Id*.

### ii. Implied Assurance of Confidentiality

"When it cannot be ascertained that a source . . . ha[d] been expressly . . . promise[d] confidentiality," the declarant explains that "certain circumstances characteristically may support an inference of confidentiality." Myrick Decl. ¶ 42. For example, the DEA takes into account "the character of the crime being investigated[] and the source's relation to the nature of the crime." *Id*. In this case, the protected sources include sources "utilized by other law enforcement agencies and concerned citizens," *id*., "who provided information about the plaintiff," *id*. ¶ 43. Because "plaintiff was arrested for conspiracy to distribute cocaine and crack cocain[e] and possession of a firearm," and because in the DEA's experience "violence is inherent in the illicit trafficking of cocain[e] and crack cocain[e]," the DEA deems it "reasonable to infer" that these sources "would fear for their safety." *Id*. In addition, release of information about these sources "could jeopardize DEA operations, since [the sources'] cooperation, and that

of any other similarly situated individuals, could be needed in future criminal investigations." *Id*. ¶ 44.

The Court finds that the DEA adequately justifies its decision to withhold information under Exemption 7(D) with respect to both coded informants and sources who provided information about plaintiff's drug trafficking activities.  *See, e.g., Adionser v. Dep't of Justice*, __ F. Supp. 2d __, __, 2014 WL 1284804, at *2 (D.D.C. Mar. 28, 2014).

### d.  Exemption 7(E)

Exemption 7(E) protects law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

### *i*.  ATF

The ATF "protect[s] from disclosure information related to a particular type of law enforcement operation, the specifics of which are not widely known to the public."  Boucher Decl. ¶ 7.  Its declarant states that, "[i]f disclosed, this information could reveal the agency's techniques and procedures," which in turn "could lead to a decreased effectiveness in future investigations and circumvention [of] the law."  *Id*.  Here, the declarant's explanation merely mirrors the language of the exemption.  Missing is any description of the operation or any statement from which the Court could conclude that disclosure of the information might reveal a law enforcement technique or procedure.  The ATF thus fails to justify its decision to withhold information under Exemption 7(E).  *See, e.g., Bartko v. U.S. Dep't of Justice*, __ F. Supp. 2d __, __, 2014 WL 3834343, at *9 (D.D.C. Aug. 5, 2014).

*ii.* DEA

The DEA withholds under Exemption 7(E) G-DEP codes and NADDIS numbers. Myrick Decl. ¶ 47. These "are part of DEA's internal system of identifying information and individuals," and they "are used within the DEA investigative records system as directed by the DEA Agents Manual" while "conduct[ing] and documenting activities during the course of criminal investigations." *Id.* A G-DEP code is assigned to each DEA case "at the time the case file is opened and [it] indicate[s] the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." *Id.* ¶ 49. "[R]elease of the G-DEP code[] would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings." *Id.* ¶ 51. The declarant states that a "[s]uspect could decode this information and change [his] pattern of drug trafficking in an effort to respond to what [he] determined DEA knows about [him,] or avoid detection and apprehension and create excuses for suspected activities." *Id.*

A NADDIS number is a "multi-digit number[] assigned to [a] drug violator[] and suspected drug violator[] known to DEA," as well as to an entity of investigative interest to the DEA. *Id.* ¶ 50. Each NADDIS number is unique and "is assigned to only one violator within the DEA NADDIS indices." *Id.* "Because of the manner in which [it is] assigned and . . . used, release of [a NADDIS number] could allow [a] violator[] to avoid apprehension, and could place law enforcement personnel in danger, since the details of many aspects of a DEA investigation would be disclosed" along with the NADDIS number *Id.* ¶ 52. If details of a DEA investigation were made public, a violator would know "how to respond in different situations where detection and/or apprehension are eminent [sic]," and thus he could "respond in a manner that would help [him] avoid detection and arrest." *Id.* The DEA's position is entirely supported by relevant case

law.  *See Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 151 (D.D.C. 2013) (withholding

G-DEP codes and NADDIS numbers under Exemption 7(E)); *Miller v. U.S. Dep't of Justice*, 872

F. Supp. 2d 12, 28-29 (D.D.C. 2012) (withholding NADDIS numbers).

### e.  Exemption 7(F)

FOIA Exemption 7(F) protects from disclosure information contained in law enforcement

records that "could reasonably be expected to endanger the life or physical safety of any

individual."  5 U.S.C. § 552(b)(7)(F).  The DEA relies on Exemption 7(F) in conjunction with

Exemption 7(C) to protect the names of DEA Special Agents, other law enforcement personnel,

and third parties such as suspects, co-defendants, witnesses and potential witnesses.  Myrick

Decl. ¶¶ 30-32, 35.  It also relies on Exemption 7(F) in conjunction with Exemption 7(D) to

protect confidential sources.  *See id.* ¶¶ 34-35.  Because the Court finds that the same

information properly is withheld under either Exemption 7(C) or 7(D), the Court need not

address the applicability of Exemption 7(F).  *See Roth*, 642 F.3d at 1173; *Simon v. Dep't of

Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

### III.  CONCLUSION

The Court concludes that: (1) the EOUSA conducted reasonable searches for records

responsive to Request Nos. 12-5244, 13-755, and 13-1128; (2) the ATF conducted a reasonable

search; (3) the EOUSA properly withheld grand jury information under Exemption 3; (4) the

DEA properly withheld wiretap information under Exemption 3; (5) the EOUSA, the ATF and

the DEA properly withheld third party information under Exemption 7(C); (6) the DEA properly

withheld information under Exemption 7(D); and (7) the DEA properly withheld information

under Exemption 7(E).  In these respects, defendants' motion for summary judgment will be

granted. However, because defendants have not demonstrated that (1) the EOUSA conducted a reasonable search for records responsive to Request No. 12-1689; (2) the ATF properly withheld firearms trace information under Exemption 3; (3) the EOUSA properly withhold judge(s)' name(s) under Exemption 3; and (4) the ATF properly withheld information under Exemption 7(E), their motion will be denied in part. The Court defers consideration of segregability.

It is hereby

ORDERED that Defendants' Renewed Motion for Summary Judgment [42] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE; it is

FURTHER ORDERED that plaintiff's Motion to Strike [48] is DENIED; it is

FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment and Motion for Discovery [49] is DENIED; and it is

FURTHER ORDERED that, within 45 days of this Order, defendants shall file a renewed motion for summary judgment.

SO ORDERED.


DATE: September 15, 2014                     /s/
                                             RUDOLPH CONTRERAS
                                             United States District Judge