UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SEAN DARNELL FOWLKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-0122 (RC) |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Second Renewed Motion for Summary Judgment.[1] For the reasons discussed below, the motion will be granted in part and denied in part.

I. BACKGROUND

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, seeking records maintained by three components of the United States Department of Justice: the Executive Office for United States Attorneys ("EOUSA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), and the Drug Enforcement Administration ("DEA"). *See generally* Am. Compl. for Declaratory and Injunctive Relief ("Am. Compl.") at 2-8. The Court granted in part and denied in part Defendant's Renewed Motion for Summary

---

[1] The Court construes plaintiff's Memorandum of [P]oints and [A]uthorities in Support of Plaintiff's [C]ross-motion for [S]ummary [J]udgment and/or [O]pposition to [D]efendants['][M]otion for [S]ummary [J]udgment [ECF Nos. 61-62] as his opposition to Defendant's Second Renewed Motion for Summary Judgment, and will deny plaintiff's cross-motion [ECF No. 62], except with respect to the judge's name. *See infra* page 9.

Judgment,[2] and remaining for resolution are five issues: (1) whether EOUSA conducted a reasonable search for records responsive to Request No. 12-1689; (2) whether BATFE justified its decision to withhold firearms trace information under Exemption 3; (3) whether EOUSA justified its decision to withhold the name of a judge; (4) whether BATFE justified its decision to withhold information under Exemption 7(E); and (5) whether defendants have released all reasonably segregable information. *See Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 307 (D.D.C. 2014).

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citation omitted). Courts will grant summary judgment to an agency as the movant if it shows that there is no genuine dispute as to any material fact and if the agency is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). More specifically, in a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

### B. The EOUSA's Search for Records Responsive to FOIA No. 12-1689

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. Dep't of Justice*, 705 F.2d 1344,

---

[2] Defendants' Motion for Summary Judgment [ECF No. 9] was withdrawn [ECF No. 27].

1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A search need not be exhaustive. *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995). As long as the agency conducts a reasonable search, it fulfills its obligations under the FOIA even if the search yields no responsive records. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate").

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. If, on the other hand, the record "leaves substantial doubt as to the sufficiency of the search, [then] summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

In relevant part, Request No. 12-1689 stated:

> I'm requesting a copy of the indictment and or complaint and arrest warrant with attached affidavits filed on May 5, 2009 as to case 1:09-CR-00244-CCB in the United States District Court for the District of Maryland[,] Northern Division[, including] but not limited to those items. Please confirm or deny the existence of those items named.

Mem. of P. & A. in Support of Defs.' Mot. for Summ. J., ("Defs.' First Mem."), Decl. of David Luczynski ("First Luczynski Decl."), Ex. A (Freedom of Information and Privacy Act Request dated March 30, 2012).

EOUSA's declarant explains that a Paralegal Specialist at the United States Attorney's Office for the District of Maryland ("USAO/DMD") searched the office's files "for the indictment and/or complaint and arrest warrant with attachments in Criminal No. CCB-09-0244[.]" Mem. of P. & A. in Support of Defs.' Second Renewed Mot. for Summ. J. ("Defs' 2d Renewed Mem."), Ex. 1 (Decl. of David Luczynski Addressing Issues Raised in Court's Memorandum Opinion) ("4th Luczynski Decl."), Attach. A ("Hart Decl.") ¶ 4. She used "[t]he LIONS system, . . . the computer system used by United States Attorney's Offices to track cases and retrieve files pertaining to cases and investigations." Hart Decl. ¶ 6. Through LIONS, she explains, the user accesses databases from which to "retrieve information based on a defendant's name, the USAO number (United States Attorney's Office's internal administrative number), the Assistant United States Attorney assigned to the case, and the district court case number." *Id.* Once the assigned Assistant United States Attorney ("AUSA") is identified, the request is forwarded to him, and the results of his search are forwarded to the EOUSA for further processing. *Id.*

With respect to FOIA No. 12-1689, the LIONS search conducted in June 2012 using plaintiff's name as a search term identified Michael C. Hanlon as the AUSA assigned to plaintiff's criminal case. *Id.* ¶¶ 7-8. The declarant forwarded plaintiff's FOIA request to AUSA Hanson who "checked the case file for the CCB-09-0244 case (the case referenced in FOIA Request No. 2012-1689) for documents responsive to the request." *Id.* ¶ 9. Although AUSA Hanlon's search did not locate a complaint, *id.*, he did find the Warrant for Arrest, Indictment,

4

Search Warrant and Affidavit, *id.* ¶ 10.  On June 7, 2014, the declarant sent these records "along with the associated FOIA forms to EOUSA[.]"  *Id.*

Plaintiff argues that EOUSA's supporting declaration fails to "address[] the fact the records requested were never filed in the United States District Court for the District of Maryland and are and always have been in the possession of AUSA Michael Hanlon."  Mem. of P. & A. in Support of Pl.'s Cross-Mot. for Summ. J. and/or Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 2 (page numbers designated by ECF).  In support of this assertion plaintiff points to correspondence explaining the practice of "prepar[ing] a copy of indictment, with the foreperson's signature redacted, [having] that redacted version placed on [the court's electronic docket]," and returning the "original indictment . . . to the AUSA for retention."  Am. Compl., Ex. B-9 (Letter to The Hon. Catherine C. Blake, United States District Judge, from Michael C. Hanlon, Assistant United States Attorney, dated September 17, 2010).

Even if AUSA Hanlon had received the original unredacted indictment from the court in 2010, plaintiff offers no support for the proposition that the document was in the case file when ASUSA Hanson conducted his search in 2012.  Nor does plaintiff rebut the presumption of good faith accorded to an agency's supporting declaration.  Here, the agency's supporting declaration describes "what records were searched, by whom, and through what processes," *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994), and the search is not inadequate solely because it does not yield a document of particular interest to the requester, *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (finding that "a search is not unreasonable simply because it fails to produce all relevant material"). The Court concludes that the search for records responsive to FOIA Request No. 12-1689 was reasonable under the circumstances of this case.

### C.  Firearms Trace Reports

From BATFE plaintiff sought records pertaining not only to his criminal case in the District of Maryland, but also to a particular firearm identified as a "357 Magnum revolver, model GP-100, serial no. 170-50376." Am. Compl., Ex. A-1 (Freedom of Information and Privacy Act Request dated March 29, 2012). According to BATFE, responsive records included "a firearms Trace Report wholly derived from the contents of the Firearms Trace System Database," Defs.' First Mem., Decl. of Stephanie M. Boucher ("Boucher Decl.") ¶ 13, and BATFE withholds the report in full under Exemption 3, Boucher Decl. ¶ 11.

Exemption 3 protects records that are "specifically exempted from disclosure by statute" if the statute either "(A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3). The statute on which BATFE relied is the Consolidated Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552 (2011), which in relevant part states:

> [N]o funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the [BATFE] or any information required to be kept by licensees pursuant to [18 U.S.C. § 923(g)], or required to be reported pursuant to paragraphs (3) and (7) of such [§] 923(g), except to: (1) a Federal, State, local, or tribal law enforcement agency or a prosecutor solely in connection with and for use in a criminal investigation or prosecution . . . . [A]ll such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in a State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the [BATFE] . . . .

Boucher Decl. ¶ 12.  BATFE's position is that "Trace Reports are based [on] and derived from information required to be kept by a Federal Firearms Licensee (FFL) pursuant to 18 U.S.C. § 923(g)," and for this reason, "and through the language of P.L. 112-55, Congress has expressly prohibited ATF from releasing such documents to the public and made them ultimately immune from legal process."  *Id*. ¶ 13.   There remains a question as to the application of Exemption 3 in conjunction with Pub. L. No. 112-55.  *See Fowlkes*, 67 F. Supp. 3d at 301.          BATFE's second declaration explains in detail the history of Congressionally-imposed "funding restrictions and conditions on [BATFE's] ability to disclose trace information."  Defs.' 2d Renewed Mem., Second Decl. of Stephanie M. Boucher ("2d Boucher Decl.") ¶ 7.  Since 2003, the declarant states, Congress has barred BATFE from expending funds to produce firearms trace information in response to a subpoena or for use in civil litigation.  *See* 2d Boucher Decl. ¶¶ 7-9.  Language included in appropriations bills has evolved over the years, *see id*. ¶¶ 9-10, and relevant to this case is language imposing the funding restriction on firearms trace data "in perpetuity until specifically repealed," *id*. ¶ 10.[3]  The declarant explains that appropriations bills continue to include the funding restriction, *see id*. ¶¶ 11-16, albeit with minor changes, *see id*. ¶¶ 11, 15, while continuing to "reflect Congress' . . . intent to prohibit the disclosure of [t]race information to the public," *id*. ¶ 17.  In short, BATFE maintains that the funding restrictions "remain active and enforceable [and] are subject to [Exemption 3]."  *Id*. ¶ 18.  The Court concurs.  *See Abdeljabbar v. BATFE*, 74 F. Supp. 3d 158, 174-75 (D.D.C. 2014); *Smith v. BATFE*, No. 13-13079, 2014 WL 3565634, at *5 n.2 (E.D. Mich. July 18, 2014); *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 145 (D.D.C. 2013).  BATFE's decision to withhold the Trace Report in full is proper.

---

[3]  *See* Defs.' 2d Renewed Mem., Ex. 5 (excerpts of firearm trace data appropriation restriction language).

*D. Name of the Judge who Convened the Grand Jury*

Plaintiff requests the name of the judge who convened Grand Jury Number 2010R00518 with regard to Criminal Case No. 1:10-CR-00332-CCB and Grand Jury Number 2010R00536 with regard to Criminal Case No. 1:09-CR-00244-CCB. *See* Defs.' Renewed Mot. for Summ. J., Second Decl. of David Luczynski ("2d Luczynski Decl."), Exs. A and G (respectively, Freedom of Information and Privacy Act Requests dated February 4, 2013 and March 12, 2013). EOUSA abandons its prior reliance on Exemption 3, *see* 2d Luczynski Decl. ¶¶ 22-23, and instead withholds the judge's name under Exemption 7(C), *see* 4th Luczynski Decl. ¶¶ 8-10.

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

EOUSA refuses to disclose the judge's name for the following reasons:

> The declarant acknowledges that a judge is at times viewed as a public figure, but the work performed, the decisions made,

> while on the bench, may also be seen as controversial, and especially, adversarial to the individuals involved. Releasing the name may subject the [judge] to harassment and possible reprisal by the individuals who may believe they have been wronged. Taking into account the way information is disseminated, electronically as well as among those who are incarcerated, their allies outside of the prison system, as well as co-conspirators, it is easy to see how [the] name of [the judge] may allow others to gain more information about [him or her] or [his or her] family. While in court, a judge benefits from the protection provided by the United States Marshalls [sic] Service, but that does not extend to the private residence. To prevent additional harassment and possible harm, the name of the [judge] should remain redacted.

4th Luczynski Decl. ¶ 10. The declarant merely acknowledges the public nature of a federal judge's work. The Court does not discount the potential risk and exposure a judge faces, yet finds the protection afforded under Exemption 7(C) is not so broad as to protect his or her name. Even the declarant acknowledges that a judge's name "is frequently published in the media," or is "posted in the courthouse lobby," or is otherwise "widely distributed." *Id*. ¶ 11. As the declarant states, this information is a matter of "public record" that plaintiff could "obtain from the clerk of court instead of EOUSA," *id*. ¶ 12. Furthermore, EOUSA cites to no case in which the name of a judge who convened a grand jury has been withheld on this basis.

The Court concludes that EOUSA does not justify its decision to withhold the name of the judge who convened the grand jury proceedings identified in plaintiff's FOIA requests, and in this respect, defendants' motion for summary judgment will be denied and plaintiff's cross-motion for summary judgment is granted.

### E. Computer Codes and File Numbers

Exemption 7(E) applies to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a

9

relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, this exemption only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)) (internal quotation marks omitted). "[I]nternal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation" may be protected under Exemption (E). *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (citation omitted), and even if the documents "are not 'how-to' manuals for law-breakers," *Mayer Brown*, 562 F.3d at 1193. BATFE relies on Exemption 7(E) to withhold two types of information.

"Category A [includes] codes and file numbers contained in TECS printouts." 2d Boucher Decl. ¶ 22. "TECS is a text-based . . . computerized information system designed to identify individuals and businesses suspected of or involved in violation of Federal law." *Id*. TECS serves additional functions:

> TECS is . . . a communications system permitting message transmittal between Federal law enforcement offices and other international, state and local law enforcement agencies. TECS provides access to the FBI's National Crime Information Center (NCIC) and the National Law Enforcement Telecommunication System (NLETS) with the capability of communicating directly with state and local law enforcement agencies. TECS is also a comprehensive [BATFE] law enforcement database that contains [BATFE] investigative records[, such as] wanted persons and fugitives; known and suspected violators of laws falling within the jurisdiction of [BATFE]; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives pursuant to statutes; violent felons; and gangs and terrorists.

*Id.* BATFE withholds TECS codes and file numbers "used to store and retrieve law enforcement information" on the ground that their disclosure "could allow individuals outside the agency to circumvent agency functions and gain access to sensitive investigative information." *Id.* ¶ 23.

"Category B [includes] Codes, file information, and specific agency and law enforcement entity codes . . . in criminal history printouts" which "identify the users of the database, the location . . . where the information was 'printed,' case file numbers, and agency and law enforcement entity identification numbers." *Id.* ¶ 24. The declarant explains that release of this information would allow subjects of law enforcement proceedings "access to sensitive investigative information that could be used to circumvent valid law enforcement investigations." *Id.* And, she states, "[t]hese internal codes if disclosed could provide insight into how agencies share information and the codes used to identify agency information." *Id.*

Plaintiff raises no objection to BATFE's application of Exemption 7(E), and the Court therefore treats this matter as conceded. *See, e.g., Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012) (where plaintiff's "opposition did not challenge the Secretary's proffered justifications under FOIA for having redacted [information,]" the arguments were "deemed conceded, and summary judgment [was] entered in favor of the Secretary"). And if the Court were to consider the merits of BATFE's arguments, the Court finds that TECS codes and other file information is properly withheld under Exemption 7(E). *See, e.g., Skinner v. U.S. Dep't of Justice*, 893 F. Supp. 2d 109, 112-14 (D.D.C. 2012).

### F. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt

11

portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The Court has reviewed all the defendants' supporting declarations and, with the exception of the name of the judge who convened the grand juries identified in plaintiff's FOIA requests, finds that defendants have released all reasonably segregable information.

## III. CONCLUSION

EOUSA has demonstrated that its search for records responsive to plaintiff's FOIA Request No. 12-1689 was reasonable, and BATFE has demonstrated that its decisions to withhold information under Exemptions 3 and 7(E) are proper. In these respects defendants' motion for summary judgment will be granted. However, because EOUSA has not shown that its decision to withhold a judge's name under Exemption 7(C) is appropriate, defendants' motion will be denied in part and plaintiff's cross-motion for summary judgment is granted on this issue. An Order is issued separately.

DATE: September 21, 2015                /s/
                                        RUDOLPH CONTRERAS
                                        United States District Judge